**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

S.Y.,

               Plaintiff,

     vs.

HOLISTIC HEALTH HEALING, INC.,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)

**THIRD AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

---

**THIRD AMENDED COMPLAINT[1]**

Plaintiff S.Y., by and through her undersigned attorneys, hereby files this Complaint against Defendant HOLISTIC HEALTH HEALING, INC. ("Defendant HHH "), and alleges as follows:

**INTRODUCTION**

1.    This action for damages is brought by the Plaintiff, S.Y., a survivor of sex trafficking, under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA"),  as well as other Florida state laws as identified herein.

2.    Defendant HHH is a hotel owner, operator, manager, supervisor, controller and/or entity otherwise responsible for hotels at which sex trafficking has taken place, including the Conty's Motel where Plaintiff S.Y. was trafficked, and at all material times, Defendant HHH was doing business as the Conty's Motel.

---

[1] This Third Amended Complaint is being filed based upon the Order of the Honorable Judge John E. Steele entered on August 5, 2020 in the matter of S.Y. v. Naples Hotel Company,  et al,  2:20-cv-00118-JES-MRM, pp. 13-14, 17.

3.     Human sex trafficking is prevalent at hotels and motels throughout the United States and globally due to many factors, including but not limited to, ease of access for buyers, the ability to pay in cash (non-traceability), the ability to maintain anonymity, privacy and discretion.

4.     At all material times, Defendant HHH had knowledge of the prevalence of sexual trafficking at hotels and motels throughout the United States and globally, including the factors identified in the preceding paragraphs, yet Defendant HHH failed to prevent and/or take steps to prevent this horrific criminal conduct from occurring at its hotels, including the Conty's Motel, so that it could continue earning a profit at the expense of human life, human rights, and human dignity.

5.     As part of its knowledge of sex trafficking, Defendant HHH knew or should have known that sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will at these hotels and motels.

6.     Plaintiff S.Y.'s sex traffickers, or 'pimps', chose the Conty's Motel as a venue to conduct their sex trafficking activities.

7.     The passage of the TVPRA in 2008 (hereinafter "TVPRA"), as well as countless other legislative initiatives, put Defendant HHH on notice of the high likelihood of these illegal acts occurring on its hotel premises, including the premises of the Conty's Motel, which, at a minimum, warranted it to be all the more vigilant and proactive in preventing this conduct.

8.     Defendant HHH, who, at all material times, was the owner, operator, manager and/or controller of the Conty's Motel, knew or should have known, based on a combination of well-documented indicators, that sex trafficking and other criminal activity was occurring, and would continue to occur, at the Conty's Motel as a result of its misfeasance and nonfeasance.

9.     At all material times, Defendant HHH, individually and/or by its actual or apparent agents, operators, servants, franchisees and/or employees, aided, concealed, confined, benefitted and profited from sex trafficking and other criminal activity that was occurring at the Conty's Motel, including as to Plaintiff S.Y.

10.     At all material times, Defendant HHH, individually and/or by its actual or apparent agents, operators, servants, franchisees and/or employees, harbored human traffickers at the Conty's Motel and/or failed to rectify the foreseeable risks of sex trafficking and other criminal activity that were occurring and would continue to occur at the Conty's Motel.

11.     At all material times, Defendant HHH, individually and/or by its actual or apparent agents, operators, servants, franchisees and/or employees, failed to take steps to prevent dangerous conditions from existing at the Conty's Motel, failed to ensure the Conty's Motel was safe and secure from criminal conduct and failed to report suspicious conduct, such as human sex trafficking, at the Conty's Motel.

12.     As a result of Defendant HHH's failure to act and its negligent operations as outlined in the Complaint, Defendant HHH allowed the Conty's Motel to be a vehicle for carrying out human trafficking, sex crimes and/or other unlawful conduct.

13.     While Defendant HHH profited from the room occupancy at the Conty's Motel, which included rental fees, increased property value, food and beverage sales on site and/or ATM fees, Plaintiff S.Y. was being exposed to continuous and repeated dangerous conditions at the Conty's Motel as a sex slave that resulted in her confinement, bodily injuries, emotional distress, mental harm and anguish from approximately 2013 and continuing through approximately February of 2016.

14.     Before and during this period from 2013 to 2016, Defendant HHH was on notice of the prevalence of sex trafficking at the Conty's Motel as well as at similarly situated hotels within Naples, Florida, and Defendant HHH failed to take adequate steps that would have prevented its occurrence.

15.     Before and during this period from 2013 to 2016, Defendant HHH failed to implement sufficient educational and training programs on sex trafficking within its corporate chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the Conty's Motel.

16.     Before  and during this period from 2013 to 2016, Defendant HHH knew or should have known that Plaintiff S.Y. was being trafficked at the Conty's Motel and Defendant HHH failed to act upon the obvious signs alerting it to the crimes taking place at the Conty's Motel.

17.     Plaintiff S.Y. brings this action for damages against Defendant HHH in violation of the TVPRA, because it knowingly benefited from a venture that it knew, or should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a) and (b), and who enabled, harbored, facilitated or financially benefited, or any combination of the foregoing, from a sex trafficking venture in which Plaintiff S.Y. was trafficked for sex, sexually exploited, and victimized in violation of the TVPRA.

18.     As a direct and proximate result of Defendant HHH's willful blindness, negligence, facilitation, misfeasance, nonfeasance and/or consistent refusals to prevent human trafficking at the Conty's Motel, the Plaintiff S.Y. was drugged, starved, choked, beaten, sex trafficked, sexually exploited, physically abused, mentally abused, and victimized repeatedly at the Conty's Motel and other hotels, in violation of the aforementioned statutes as well as Florida state law.

19.     This action is also for violation of Florida's RICO laws, premises liability, negligent hiring, supervision and retention, negligent rescue, and aiding and abetting underlying wrongdoing.

## JURISDICTION AND VENUE

20.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States and this Court has supplemental jurisdiction over Plaintiff's claims that do not arise under federal law because each claim is "so related to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought.

## PARTIES

22.     At all times material to this complaint, Plaintiff S.Y. was a resident of Collier County, Florida.

23.     Plaintiff S.Y. is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

24.     Plaintiff  S.Y. was sex trafficked at the Conty's Motel located at 11238 Tamiami Trail E, Naples, Florida 34113 between 2013 and 2016.

25.     Defendant HHH is a Florida corporation with a principal place of business located at 11238 Tamiami  Trail East,  Naples, Florida 34113.

26.     At all times material to this complaint, Defendant HHH was doing business as Conty's Motel, and, upon information and belief, was authorized to do, licensed to do, and doing business in the State of Florida offering Conty's Motel as a place of public lodging.

27.     At all times material to this complaint, Defendant HHH was, by and through its agents, servants, franchisees and/or employees, the owner, operator, manager, supervisor, controller and innkeeper of a hotel, namely Conty's Motel located at 11238 Tamiami Trail E, Naples, Florida 34113.

## SEX TRAFFICKING UNDER FEDERAL LAW

28.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

29.     Sex trafficking ventures are prohibited by federal criminal law. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590.  The crime of slavery can be divided into two elements: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

30.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

31.     Pursuant to 18 U.S.C. §1591(a) and (b), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion *or* from a person under the age of 18 years old are guilty of sex trafficking.  This includes, at a minimum, **_both_** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work **_and_** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

## STATEMENT OF FACTS

### Defendant's Duty of Care to Patrons

32.     Chapter 509 of the Florida Statutes imposes legal responsibilities upon hotels, like those owned and operated by Defendant HHH herein, to take action to protect people. In Florida, hotels are "innkeepers" and owe patrons a special duty of care.

33.     The Conty's Motel is a public lodging establishment pursuant to Chapter 509 of the Florida Statutes.

34.     Defendant HHH owns, operates, manages, supervises, controls and/or is otherwise responsible for the Conty's Motel for the purpose of making a profit.

35.     The premises of the Conty's Motel includes a common space and private rooms as well as a parking lot that abuts to a sidewalk and/or land, and, at all material times, Defendant HHH had possession, custody, or control of these common spaces, private rooms, parking lots and any sidewalk and/or land abutting thereto as it applies to its business of providing public lodging at the Conty's Motel.[2]

36.     The Conty's Motel abuts to pathways, parking lots and/or driveways, and Defendant HHH was or should have been aware that these neighboring parking lots, pathways and/or other

---

[2] If customers or clients are invited to use a convenient parking lot then the business owner may be liable for injuries they sustain on that lot even if it is not technically within the business' property line. *See Gutierrez v. Dade County School Bd.*, 604 So. 2d 852, 77 Ed. Law Rep. 1052 (Fla. 3d DCA 1992).

driveways were being used by its hotel patrons to traverse to and from the Conty's Motel, thereby expanding the zone where Defendant HHH were to have prevented foreseeable risks of injury to the Plaintiff S.Y.[3]

37.     Aside from its special duty to patrons and guests at the Conty's Motel, such as Plaintiff S.Y., at all material times, Defendant HHH had one of the highest obligations to protect its guests from known or anticipated dangers, which includes sex trafficking and illegal enterprises.

38.     At all relevant times, Defendant HHH was aware of and/or should have been aware of its role and responsibility in human sex trafficking.

### Defendant HHH's Knowledge of The Prevalence of Sex Trafficking at Hotels and Its Participation in the Sex Trafficking Industry

39.     Defendant HHH, as owner, operator, manager, supervisor, controller and/or entity otherwise responsible for hotels, including the Conty's Motel, has long profited from the reputations of hotels, including the Conty's Motel, as havens of privacy and discretion for the offending, including the criminals that trafficked Plaintiff S.Y.

40.     At all  material times, Defendant HHH, as owner, operator, manager, supervisor, controller and/or entity otherwise responsible for hotels, including the Conty's Motel, knew or should have known that its hotels, including the Conty's Motel, offered anonymity and non-traceability, making it ideal venues for crime, drugs and sex trafficking in particular.

41.     At all  material times, Defendant HHH, as owner, operator, manager, supervisor, controller and/or entity otherwise responsible for hotels, including the Conty's Motel, knew or should have known that hotels are the top-reported venue where sex trafficking acts occur and that traffickers were using its hotels, including the  Conty's Motel, as hubs for their sexual trafficking operations.

---

[3] *Borda v. East Coast Entertainment, Inc.*, 950 So. 2d 488 (Fla. 4th DCA 2007).

42.    At all  material times, Defendant HHH, as owner, operator, manager, supervisor, controller and/or entity otherwise responsible for hotels, including the Conty's Motel, knew or should have known that traffickers were harboring, raping and assaulting victims at its hotels, including the Conty's Motel, and were forcing it to engage in "in call" services, wherein buyers ("Johns") would come to the hotels solely to purchase sex from these victims, as well as "out  call" services, wherein the buyer would rent a hotel room and the trafficker would deliver the victim to the buyer's room to complete the sordid transaction.

43.     At all material times, Defendant HHH, individually and/or by and through its actual or apparent agents, servants, franchisees and/or employees, witnessed manifestations of sex trafficking and commercial exploitation taking place at its hotels, including the Conty's Motel, through various indicators that traffickers and their victims exhibit during their stay at its hotels, including the Conty's Motel.

44.    At all material times, Defendant HHH was on notice of repeated incidences of sex trafficking occurring on its hotel premises, including the Conty's Motel, yet it failed to take the necessary actions to prevent sex trafficking from taking place.

45.    At all material times, Defendant HHH knew or should have known that pimps and sex traffickers used its hotels, including the Conty's Motel, to facilitate the trafficking of women for sex.

46.    Defendant HHH had the ability and the greatest reach to prevent, identify and thwart sexual exploitation at its hotels, including the Conty's Motel.

47.    Multiple statutes and initiatives starting in 1997, have informed, mandated, called for, and suggested hotel owners, operators, managers,  supervisors, controllers and/or staff, including

Defendant HHH, to implement effective safeguards to mitigate the risk that human trafficking will occur at its hotel premises and/or or involve its personnel.

48.     Prior to  the trafficking of Plaintiff S.Y., voluminous data, step-by-step solutions and well-researched manuals published by anti-trafficking groups were available to Defendant HHH, individually and/or through its actual or apparent agents, servants, franchisees, employees and/or staff in every position, to help it identify the signs of human sex trafficking and stop it.

49.     At all material times, Defendant HHH had a legally imposed duty to ensure that its hotel properties, including the Conty's Motel, had taken all appropriate measures to prevent sex trafficking, and/or to timely implement reasonable policies, training, education and security measures to prevent sex trafficking.

50.     At all material times, the agents and/or employees of Defendant HHH were uniquely situated to identify and report suspicious activity on its hotel properties, including the Conty's Motel, because from check-in to check-out there were numerous indicators that the traffickers and the adults and children who were being victimized by sex trafficking exhibited during their stay at its hotels, including the Conty's Motel.

51.     Had Defendant HHH properly trained its agents and/or employees and/or implemented an anti-human trafficking protocol throughout its hotels and/or provided other reasonable security measures, it could have prevented the trafficking of persons on its hotel properties, including the Conty's Motel.

52.     Signs of sex trafficking at a hotel, and signs which were occurring at Defendant HHH's hotels,  including  the Conty's Motel,  include, but are not limited to, the following: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, renting two rooms next door to each other, declining housekeeping service for several consecutive days, significant foot

traffic in and out of rooms, men traveling with multiple unrelated women, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.

53.     Defendant HHH, individually and by and through its actual or apparent agents, servants, franchisees, employees and/or staff, was aware of and/or should have been aware of a number of warning signs at its hotels, including the Conty's Motel, that indicated the presence of human trafficking, including but not limited to:

   a.  persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

   b.  persons lacking freedom of movement or being constantly monitored;

   c.  persons having no control over or possession of money or ID;

   d.  persons dressing inappropriately for their age or having lower quality clothing compared to others in their party;

   e.  persons requesting room or housekeeping services (additional towels, new linens, etc.), but denying hotel staff entry into the room;

   f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

   g.  persons extending stay with few or no personal possessions in the room;

   h.  excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion);

   i.  the same person reserving multiple rooms;

   j.  a room being rented hourly, less than a day, or for an atypical extended stay;

   k.  attempts of persons to sell items to or beg from patrons or staff;

   l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

   m.  loitering and solicitation of male patrons;

n.  individuals waiting at a table or bar and then being picked up by a male (trafficker or customer);

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.

54.   Had Defendant HHH educated and/or trained its actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, its actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at its hotels, including the Conty's Motel, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

55.   Defendant HHH could have and should have adopted policies and procedures related to human trafficking and made anti-human trafficking resources readily available to its actual or apparent agents, servants, franchisees, employees and/or staff, but it did not.

56.   Defendant HHH could have and should have mandated that all of its actual or apparent agents, servants, franchisees, employees and/or staff complete anti-human trafficking training, but it did  not.

57.   Defendant HHH could have and should have encouraged all of its actual or apparent agents, servants, franchisees, employees and/or staff to report suspected incidents of human trafficking when observed on its hotel properties, including the Conty's Motel, but it did  not.

58.   Defendant HHH could have and should have developed and maintained relationships with law enforcement regarding appropriate and timely responses to suspected incidents of human trafficking on its hotel properties, including the Conty's Motel, but it did  not.

59.   Defendant HHH could have and  should  have posted anti-human trafficking awareness and informational materials in common areas and guest rooms at its hotels, including the Conty's Motel, to help eliminate human trafficking, but it did  not.

60.    Defendant HHH could have and should  have developed and maintained relationships with non-profit service providers in the field of appropriate human trafficking prevention training for hotel staff, but it did  not.

61.    Defendant HHH failed to take effective preventative measure at its hotels, including the Conty's Motel, in spite of the indicia of human trafficking and effective preventative measures being widely known and available to it; it simply elected not to engage in preventative policies and practices.

62.    The motivation behind Defendant HHH's ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; Defendant HHH ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to its profit margins and a corresponding complete disregard for the value of human life.

63.    By repeatedly failing to heed the call or repeatedly failing to execute its own policies, Defendant HHH facilitated the sexual trafficking crimes at its hotels, including the Conty's Motel, content to direct its efforts solely to profit and the bottom line.

64.    Had Defendant HHH implemented anti-human trafficking measures at its hotels, including the Conty's Motel, this would have been in conflict with its revenue objective which was constant and full hotel  occupancy.

65.    Upon information and belief, Defendant HHH, individually and/or through its agents, lobbied through local, state and federal government levels against anti-human trafficking policies.

66.    Due to Defendant HHH's failure to act, Defendant HHH facilitated enabled sex traffickers to use its hotels for sex trafficking, including the Conty's Motel, and traffickers and "Johns" continue to capitalize on Defendant HHH's failure to timely and effectively act.

67.     Defendant HHH's failure to prevent and stop sex trafficking and sexual exploitation at its hotels, including the Conty's Motel, effectively makes it accountable to victims of sex trafficking, including the Plaintiff S.Y.

## The Sex Trafficking of Plaintiff S.Y. at the Conty's Motel

68.     From approximately 2013 through February 2016, Plaintiff S.Y. was recruited to, enticed to, solicited to, held at, harbored as captive at and/or transported to various hotels in Naples, Florida by her sex traffickers to engage in commercial sex acts at these hotels on a regular, consistent and/or repeated basis, and from approximately 2013 to 2016, Plaintiff S.Y. was trafficked by Gregory Hines (aka Bowlegs), Keith Lewis, Rambo and others at the Conty's Motel.

69.     At all times material to this Complaint, Defendant HHH, individually and/or by and through its actual or apparent agents, servants, franchisees and/or employees, regularly rented or otherwise provided, for its own benefit, rooms and services at the Conty's Motel to Plaintiff S.Y.'s sex traffickers.

70.     At all times material to this Complaint, Defendant HHH received monetary payment for the rental of rooms at Defendant HHH, including the rooms where Plaintiff S.Y. was being trafficked.

71.     During the relevant time period, the Conty's Hotel designated a section of its hotel for "long term guests." This is the section of the hotel where Plaintiff S.Y. was trafficked.

72.     The Conty's Motel staff saw Plaintiff S.Y. with Gregory Hines on numerous occasions and at one point Hines sold Plaintiff S.Y. to a "John" for multiple days and the Conty's Motel staff saw Plaintiff S.Y. with the "John" during that time period and did not take appropriate actions to help Plaintiff S.Y.

73.     In addition to witnessing Plaintiff S.Y. being trafficked, sex trafficking activities and drug use were conducted in the open on the premises of the Conty's Motel.

74.     The Plaintiff S.Y. was forced to engage in sexual activities within and on the premises of the Conty's Motel that was at all relevant times owned, operated, managed, supervised, controlled and/or otherwise held responsible by Defendant HHH.

75.     Upon information and belief, Defendant HHH's agents and employees made promises to the Plaintiff's sex traffickers to not interfere with the Plaintiff S.Y. who was a victim of human sex trafficking and slavery.

76.     The human sex trafficking enterprise, specifically as to how it was applied to Plaintiff S.Y., was run out of the Conty's Motel as follows:

   a.  Plaintiff's sex traffickers put up internet advertisements for the purpose of prostituting the Plaintiff. Said advertisements would include a phone number, which would ring to their cell telephone. During the telephone call, sex for cash was negotiated and the caller "John" would be informed that the Plaintiff was at a hotel in Naples, such as the Conty's Motel;

   b.  The caller "John" who negotiated for the Plaintiff's sex services would then appear on the hotel premises and either the Plaintiff would meet the "John" in the lobby to escort the "John" to the hotel room, or the "John" would speak to the staff at the hotels to inquire about the Plaintiff's room number or otherwise be directed to the Plaintiff's room.

   c.  While the Plaintiff S.Y. performed sex acts with the "John" in the room, the Plaintiff's sex traffickers would linger in the halls and on the premises of the hotel;

   d.  The "John" paid the Plaintiff in cash in exchange for the commercial sex acts received in the hotel room.  Plaintiff gave the cash received for the commercial sex acts to her trafficker.

   e.  In turn, the Plaintiff S.Y.'s sex traffickers, used said cash as payment for the hotel rooms where commercial sex acts continued to take place, thereby benefitting the occupancy rates and Defendant HHH financially.

   f.  The Plaintiff's sex traffickers also engaged in the commercial sale of illegal drugs on the hotel premises with sales taking place either in the hotel rooms or in public areas of the hotels.

77.     Plaintiff S.Y. performed numerous commercial sex acts ("dates") per day while at the Conty's Motel between 2013 and 2016.  As such, the routine identified in the preceding paragraph occurred on the hotel premises numerous times within a 24-hour window.

78.     Upon information and belief, some of the "Johns" visiting the Plaintiff while on the premises of the Conty's Motel, were staff, agents and/or employees of Defendant HHH.

79.     Upon information and belief, during the time period Plaintiff S.Y. was trafficked at the Conty's Motel, the traffickers and "Johns" used the ATM in the lobby on a frequent basis.

80.     While being trafficked at the Conty's Motel, Plaintiff S.Y.'s room was frequented by many men on a daily basis and was always littered with drugs and drug paraphernalia.

81.     Plaintiff S.Y.'s sex traffickers, individually and through the Plaintiff and other agents, conducted multiple illegal drug sales throughout the day at the Conty's Motel in adjoining rooms.

82.     Upon information and belief, while at the Conty's Motel, Plaintiff S.Y. was forced to engage in frequent use of illegal hard drugs and would exhibit behavior consistent with someone who was under the influence, or near overdose, of a chemical substance.

83.     The following was also routine conduct taking place at the Conty's Motel as a result of the human sex trafficking enterprise:

   a. Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other;

   b. Plaintiff's sex traffickers paid cash for the rooms at the Conty's Motel where the Plaintiff engaged in commercial sex acts;

   c. Plaintiff's sex traffickers booked extended stays at the Conty's Motel for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

   d. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

e.  Plaintiff was confined in the rooms at the Conty's Motel for long periods of time;

f.  Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts;

g.  Men ("Johns") frequently entered and left the rooms at the Conty's Motel where the Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

h.  Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

i.  Plaintiff would frequently request clean towels and linens;

j.  Plaintiff dressed in a sexually explicit manner and would walk the hallways of the Conty's Motel;

k.  Excessively loud noises would consistently come from Plaintiff's rooms;

l.  During nighttime hours, Plaintiff and her "Johns" and drug clients would create noise in the public area of the Conty's Motel and, upon information and belief, would be a disturbance to other guests using the hotel for their intended purposes;

m.  Plaintiff would sleep during the day and the staff members of the Conty's Motel would consistently see the Plaintiff wearing lounge or sleep type clothing during the day; and

n.  While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

84.  In addition, Defendant HHH knew or should have known that:

a.  Women, including Plaintiff, were walking around the Conty's Motel with cuts, lacerations, abrasions, bruises, injuries and bandages, including all over their faces;

b.  Women, including Plaintiff, were walking around the Conty's Motel strung out on drugs for days at a time;

c.  Women, including Plaintiff, at the Conty's Motel looked tired and haggard due to forced sex work at all hours of the day for many days at a time;

    d. Women, including Plaintiff, at the Conty's Motel were dressing inappropriately for the location and weather;

    e. The same women including Plaintiff, were walking in the lobby of the Conty's Motel 9-10 times a day with different men (would meet "Johns" at front door); and

    f. The Collier County Sheriff Office ("CCSO") would come to the hotel, knock on doors and tell girls and men to leave, and follow it to the next hotel.

85. Defendant HHH knew or should have known of the dangerous conditions at the Conty's

Motel that were likely to cause harm to the Plaintiff, in the following ways:

    a. The Conty's Motel was not properly designed for guest safety and proper monitoring by staff and surveillance systems;

    b. The presence of suspicious people;

    c. Random people coming in and out of certain room each night to have sex and buy drugs;

    d. Rooms at the Conty's Motel were routinely filled with about 10 people who engaged in sex and drugs;

    e. Loud, boisterous sounds and music in the rooms and public areas throughout the night and day disturbed the quiet enjoyment of other guests;

    f. Women and clients would go into hotel parking lot and loiter;

    g. Upon alert by other hotel customers and/or staff of the Conty's Motel, the CCSO received emergency calls that prostitution was occurring at the Conty's Motel in the rented rooms of the Plaintiff's sex traffickers and/or the Plaintiff;[4]

    h. Emergency medical technicians from the City of Naples were frequently called to the Conty's Motel for drug overdoses and/or injuries occurring its hotel rooms that were rented to the Plaintiff's sex traffickers and/or the Plaintiff; and

    i. Defendant HHH knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring as the Conty's Motel, and that the Plaintiff might be harmed. Further that the scope of the anticipated risk to which Defendant HHH allowed the Plaintiff to be exposed and the Plaintiff

---

[4] Upon information and belief, CCSO was present on Defendant HHH's hotel premises on multiple occasions during the relevant time period.

was within the zone of risks that were reasonably foreseeable by the Defendant.

86.     The foregoing routine and conduct occurred while Plaintiff S.Y. was being sex trafficked at the  Conty's Motel from 2013 through early 2016 and, upon information and belief, the foregoing routine and conduct, as it applies to sex trafficking not specific to Plaintiff, also occurred many years prior to 2013.

87.     Naples Police were cognizant of the foregoing routine and conduct from afar, making it impossible for Defendant HHH to be ignorant of what was occurring right in front of it.

88.     In fact, as early as the Fall of 2013, the Collier County Sherriff's Office ("CCSO") had established routine patrols to check local hotels (including the Conty's Motel) for human sex trafficking activities.

89.     While Plaintiff S.Y. was being trafficked at the Conty's Motel, the CCSO reported to the Conty's Motel and made the sex trafficking known to Defendant HHH.

90.     Defendant HHH, individually and/ or by its actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge, that they were renting or otherwise providing rooms and services to individuals, such as human sex traffickers, who were engaged in the commercial sex trade.

91.     Defendant HHH, individually and/or by its actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge, that the women with Plaintiff's sex traffickers, including Plaintiff S.Y., were used to carry out the commercial sex trade and sale of illegal drugs.

92.     Defendant HHH, individually and/or by its actual or apparent agents, servants, franchisees and/or employees, knew or should have known of suspicious activity occurring at the  Conty's Motel and that by failing to inspect and make its hotel premises safe from criminal

activity, it was foreseeable that illegal activity was, and would continue to be, carried out at the  Conty's Motel.

93.     It follows then that Defendant HHH could reasonably foresee that sex crimes, human trafficking or other foreseeable acts were occurring on its hotel premises and/or were being committed against hotel guests, such as the Plaintiff  S.Y.

94.     Additionally, Defendant HHH, individually and/or by its actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge that the sale and usage of illegal drugs were being performed on the premises.

95.     Moreover, Defendant HHH's hotel housekeeping, front desk, maintenance, food preparation staff, managers, and pool staff had conversations with the Plaintiff S.Y., and had knowledge, or should have had knowledge, that the Plaintiff was staying at the hotel for an extended period of time to carry out various sex trafficking ventures.

96.     Defendant HHH's hotel staff also knew that the Plaintiff would routinely sleep during the day and walk the premises at night in provocative attire.

97.     At all material times, Defendant HHH, individually and/or by and through its actual or apparent agents, servants, franchisees and/or employees, was uniquely positioned to observe the manifestations or indications of human sex trafficking and human sex trafficking victims within the Conty's Motel.

98.     Had the Conty's Motel staff been properly trained by Defendant HHH and/or anyone acting on its behalf regarding the obvious signs of sex trafficking, they would have observed the obvious signs of sex trafficking at the Conty's Motel, including as they applied to Plaintiff S.Y., and these signs would have been recognized and, therefore, reported.

99.     Defendant HHH employed or ratify the employment of individuals through horizontal joint employment and/or vertical joint employment.

100.    Defendant HHH failed to implement and enforce any of its own policy or policies and protect Plaintiff S. Y. from being sex trafficked.

101.    Defendant HHH knew or should have known that the Conty's Motel where Plaintiff S.Y. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the Conty's Motel premises, including when Plaintiff S.Y. was trafficked.

102.    Despite having clear evidence of the extensive prostitution and sex trafficking that occurs at the Conty's Motel, Defendant HHH repeatedly failed to stop these actions.

103.    Defendant HHH could have prevented sex trafficking, by: (i) distributing information to assist its agents, employees, operators, and brand managers in identifying human trafficking and indications of an illegal enterprise or suspicious activity; (ii) posting notices on what is human trafficking and a national hotline; (iii) providing a process for reporting and escalating human trafficking concerns within the organization, and to appropriate outside agencies; (iv) requiring all employees to attend training related to handling a situation involving human trafficking; (v) providing new hire orientation on human rights, corporate responsibility and whistleblowing of enablers; (vi) providing training and education to its hotels through webinars, seminars, conferences, and online portals on how to respond to suspected human traffickers, victims and suspicious activity; (vii) developing and holding ongoing training sessions on human trafficking; or providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention; (viii) providing steps they can take to deter traffickers and decline forms of bribery;  and (ix) ensuring strict security protocols, credit cards only, and no loitering.

104.    For years, Defendant HHH has failed to take adequate steps to prevent the rampant culture of sex trafficking which tragically occurs on its properties, including the Conty's Motel at which Plaintiff S.Y. was trafficked.

105.    The acts and omissions of Defendant HHH served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff S.Y., and others, for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking.

**Defendant HHH Knowingly Benefitted**
**From Plaintiff S.Y.'s  Sex Trafficking**

106.    At all material times, Defendant HHH received money and financially profited from the forced commercial sex acts that were being carried out by the Plaintiff S.Y. on the premises of the Conty's Motel.

107.    Defendant HHH knew or should have known that it  was financially profiting from the continuation of illegal commercial sex acts committed on the premises of the Conty's Motel through both renting of rooms and provision of the Plaintiff's forced commercial sex services.

108.    Despite knowledge, constructive knowledge and general awareness of the signs of human trafficking, Defendant HHH, individually and/or by and through its actual or apparent agents, servants, franchisees and/or employees, failed to report to authorities, intervene, disrupt, refuse or otherwise stop the human sex trafficking of the Plaintiff S.Y.

109.    By harboring the Plaintiff S.Y.'s sex traffickers and the Plaintiff's commercial sex and drug acts at the Conty's Motel, Defendant HHH, individually and/or by and through its actual or apparent agents, servants, franchisees and/or employees, continued to financially profit from the room occupancy  derived from not reporting and not refusing the human sex trafficking of the Plaintiff.

110.   Accordingly, Defendant continued to financially profit from the room occupancy derived from not protecting its hotel guests, to wit the Plaintiff S.Y., from being a continuous victim of human sex trafficking.

**Defendant's Willful Blindness to Sex Trafficking at its hotels**

111.   Defendant HHH has been on constructive or actual notice[5] of repeated incidences of sex trafficking occurring at the Conty's Motel, yet Defendant HHH failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at the Conty's Motel.

112.   Plaintiff S.Y. was a hotel guest at  the Conty's Motel and Plaintiff was seriously and permanently injured as a direct result of Defendant HHH's acts and omissions, in that Defendant HHH permitted, harbored and facilitated illegal sex trafficking ventures to take place at the Conty's Motel whereby the Plaintiff S.Y. was  routinely and continuously abused, battered, falsely imprisoned, raped, beaten, starved, forcibly injected with drugs and enslaved.

113.   More specifically, at all material times, in the quest for profits, the acts and omissions of Defendant HHH regarding the Conty's Motel caused the Plaintiff to suffer:

     a.   Forced labor;

     b.   Forced confinement without safe means of escape;

     c.   Assault and fear;

     d.   Sickness, dizziness and headaches;

     e.   Cuts, lacerations, abrasions and other physical harm;

     f.   Mental anguish, humiliation, exploitation, degradation and mental distress;

     g.   Suffocation, battery and rape;

---

[5] By virtue of membership in AAOHO or ALHA, incidents on the premises, observations and evidence on the premises,  incidents at nearby properties, news reports, industry reports, customer reviews or otherwise.

    h.   Shock, fright and post-traumatic stress;

    i.   Overdose and drug-induced dangers (the Plaintiff suffered drug overdoses, drug-induced actions which caused harm to themselves, physical deformities and scarfing from actions of the "Johns" and drug usage); and

    j.   Invasion of privacy and wrongful entry of "Johns."

## CAUSES OF ACTION

114.    The injuries and harms that Plaintiff S.Y. suffered as a result of Defendant HHH's negligent operations of the Conty's Motel and failure to make the hotel premises safe, are of a permanent and/or continuing nature.

115.    Defendant HHH, as hotel owner, operator, supervisor and controller of the Conty's Motel, had a continuing legal duty to protect its hotel guests and other invitees, like the Plaintiff S.Y., to use ordinary care to keep its hotel premises in a reasonably safe condition, and to protect its guests, such as the Plaintiff S.Y., from harm due to reasonably foreseeable risks of injury, regardless if the guests were utilizing the hotel's common rooms, facilities, exterior passageways, or were within the confines of the rented rooms.[6]

116.    Defendant HHH failed in its duties to the Plaintiff S.Y. to provide security and other precautions to prevent the criminal acts upon her by third parties on a regular basis.

117.    The attacks upon the Plaintiff S.Y. by her traffickers, by the "Johns" and staff persons were foreseeable and thus arose a duty by Defendant HHH to protect the Plaintiff.

118.    Defendant HHH observed, knew or should have known there was a foreseeable increased risk that illegal sex and drug trafficking was occurring at the Conty's Motel and that the Plaintiff S.Y. might be harmed during the rental of the rooms the Conty's Motel.

---

[6] 17 Fla. Jur., Hotels, Restaurants, and Motels, § 24; 40 Am.Jur.2d, Hotels, Motels, and Restaurants, § 111.

119.    To Defendant HHH, as hotel owners, operator, supervisor and controller, the crime of human sex trafficking was a foreseeable risk because the long history, prevalence and extent of this sex slavery was commonly known to it.

120.    At all relevant times, Defendant HHH, as hotel owners, operator, supervisor and controller, was a vehicle with which the crime of human sex trafficking was readily carried out, furthered, harbored and made financially viable.

121.    Significantly, Defendant HHH knew or should have known there was a foreseeable increased risk that illegal sex trafficking was occurring at the Conty's Motel, that tragic incidents were occurring as a result, and that the Plaintiff S.Y., as a hotel guest, might be harmed due to prior similar incidents at the Conty's Motel.

122.    Accordingly, Defendant HHH should have taken steps to prevent sex and drug trafficking at the Conty's Motel in accordance with applicable Federal, State and local laws and guidelines.

123.    Accordingly, because human sex trafficking and other illegal activity associated therewith was foreseeable, Defendant HHH had a duty to take adequate security or remedial measures to protect its hotel guests from criminal activity, to wit, the Plaintiff S.Y.

124.    Plaintiff S.Y.'s injuries and consequential damages were the direct and proximate result of Defendant HHH's acts and omissions, namely:

    a.  Failure to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk;

    b.  Failure to provide guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking;

    c.  Failure to establish, implement or enforce a protocol on reporting suspected human trafficking;

    d.  Failure to establish, implement or enforce a protocol to respond to situations involving human trafficking;

    e.   Failure to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks;

    f.   Failure to require its agents, servants, franchisees and/or employees to participate, complete and continue education regarding sex trafficking in hotels;

    g.   Failure to remove and/or refuse subsequent accommodations to the Plaintiff's sex traffickers when conduct displayed on the premises included a combination of intoxication, profanity, lewdness, or brawling; disturbing the peace or comfort of other guests; illegal activity; disorderly conduct; and drug dealing;

    h.   Allowing rental of hotel rooms without conferring with senior management notwithstanding the suspicions;

    i.   Failure to correct or remedy protocols that were defective or ineffective in preventing or handling prior sex and drug trafficking incidents at Defendant's hotel property;

    j.   Failure to provide adequate security personnel at the Conty's Motel to protect its guests;

    k.   Failure to establish, implement and enforce appropriate security policies and procedures for certain times of day, room locations, and suspicious activity;

    l.   Permitting unknown persons to loiter, to gain entry to guest hallways, to know room numbers, and have access to room keys;

    m.   Failure to check the background of the hotel employees for sex crimes and other unlawful acts; and

    n.   Otherwise failing to use reasonable care for the safety of its guests.

125.    By failing to act, Defendant HHH, by and through its actual or apparent agents, servants, franchisees and/or employees, allowed the Plaintiff S.Y. to be harbored and confined for sexual acts while collecting rental fees thereon.

126.    Defendant HHH 's willful blindness, negligence, or indifference for the health and welfare of the Plaintiff  S.Y. spanned over many months and exceeds all bounds of decency.

127.    Pursuant to Florida's statute 501.204, Defendant HHH has engaged in unconscionable and unfair acts or practices in the conduct of the hospitality industry.

128.    As a further direct and proximate result of Defendant HHH's conduct and lack of due and reasonable care, the Plaintiff S.Y. had incurred expenses, fees, and costs of medical care and attention to her injuries, including: (1) physicians' fees; (2) medications and medical supplies; (3) hospitalizations; and (4) transportation costs to and from various physicians' offices and hospitals.

129.    As a further direct and proximate result of Defendant HHH's conduct and lack of due and reasonable care, the Plaintiff S.Y. has suffered great physical and mental pain, and will continue to suffer such pain for the indefinite future, for which the Plaintiff should also be compensated by Defendant HHH.

## COUNT I
## VIOLATION OF 18 U.S.C. § 1595 ("TVPRA")

130.    Plaintiff S.Y. sets forth an action for violation of 18 U.S.C § 1595 as against Defendant HHH.

131.    In support of her action against Defendant HHH, Plaintiff S.Y. adopts and incorporates by reference paragraphs 1-129 contained in this Complaint as if fully set forth herein.

132.    At to Plaintiff S.Y.'s TVPRA action as against Defendant HHH, Plaintiff  S.Y. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595 against any individual or entity who knowingly benefits, financially or by receiving anything of value from participation in a venture which that entity or person knew or should have known has engaged in violations of the TVPRA.

133.    Defendant HHH knowingly benefited from the sex trafficking of Plaintiff S.Y. by receiving payment for the rooms rented for Plaintiff S.Y. and her traffickers at the Conty's Motel.   In addition, Defendant HHH received other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking.

134.    Defendant HHH knew or should have known about the nature of the sex trafficking venture at the Conty's Motel, including as they related to Plaintiff S.Y., for the reasons stated above which include, but are not limited to:

      a.   Cash payments for the rooms by the sex traffickers;

      b.   Refusal of housekeeping services by those persons engaged in sex trafficking;

      c.   Excessive used condoms located in the rooms used for sex trafficking;

      d.   Excessive requests for towels and linens in the rooms used for sex trafficking;

      e.   Hotel staff observing Plaintiff S.Y. and her traffickers in the hotel;

      f.   Plaintiff S.Y. being escorted by traffickers in and around the hotel;

      g.   Pleas and screams from help coming from the rooms of Plaintiff S.Y.;

      h.   Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

      i.   Multiple men per day coming and going from the same rooms without luggage or personal possessions; and

      j.   Knowledge of police and EMS activity at the Conty's Motel and at other locations near the Conty's Motel that was related to commercial sex work.

135.    Defendant HHH was participating in a venture under 18 U.S.C. § 1595(a) by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff S.Y. for commercial sexual exploitation by repeatedly renting rooms at Conty's Motel to people Defendant HHH knew or should have known were engaged in sex trafficking.

136.    For the reasons set forth herein, Plaintiff S Y. suffered and will continue to suffer substantial economic, physical, and psychological injuries as the result of being trafficked and sexually exploited at the Conty's Motel in violation of 18 U.S.C. §1591.

## COUNT II
### Violation of Fla. Stat. § 772.104

137.    Plaintiff S. Y. brings this claim against Defendant HHH under Fla. Stat. § 772.104(1) and § 772.104(2).

138.    In support of her action against Defendant HHH, Plaintiff S.Y. adopts and incorporates by reference paragraphs  1-129 contained in this Complaint as if fully set forth herein.

139.    At all material times, Defendant HHH associated with the Plaintiff S.Y.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme.  This association-in-fact is therefore an Enterprise within the meaning of Fla. Stat. § 772.102(3).

140.    Defendant HHH conducted or participated in, or conspired to conduct or participate in, the affairs of the RICO Enterprise through a pattern of numerous acts of racketeering activity defined under Fla. Stat. § 772.102(1)(a)(15) and in violation of Fla. Stat. § 772.103, related by their common purpose to profit off an institutionalized sex trafficking scheme.

141.    Specifically, Defendant HHH conducted or participated in, and/or conspired to conduct or participate in, the affairs of the RICO Enterprise by knowingly, or with reckless disregard, maintaining sex trafficking as defined by Fla. Stat. § 787.06(2)(f).

142.    As described in the preceding paragraphs, Defendant HHH, regarding the RICO Enterprise, maintained sex trafficking by knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on its premises between 2013 and 2016.

143.    In exchange for maintaining the sex trafficking scheme, Defendant HHH, regarding the RICO Enterprise, received a financial benefit in violation of Fla. Stat. § 787.06(3), namely, repeated payments for rooms used for sex trafficking.

144.    These predicate acts of racketeering activity described above constitute a "pattern of racketeering activity" as defined in Fla. Stat. § 772.102(4) and furthered the common purpose of the RICO Enterprise to profit from a sex trafficking scheme.

145.    Defendant HHH's acts have yielded consistent results and caused economic, physical, and psychological injuries to the Plaintiff S.Y.

146.    As set forth in the preceding paragraphs, the racketeering acts have similar participants.

147.    Defendant HHH is a hospitality company that provides lodging at the Conty's Motel.

148.    Defendant HHH, regarding the RICO Enterprise, directed its racketeering activities at a common victim, Plaintiff S.Y.

149.    The acts of Defendant HHH have similar methods of commission, such as maintaining deficiencies in implementing and enforcing policies and protocols regarding sex trafficking at the Conty's Motel in order to maximize its profits.

150.    As a direct and proximate result of Defendant HHH's acts discussed in this section, Plaintiff S.Y. has suffered bodily injuries that are of a continuing or permanent nature, resulting in pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

## COUNT III
### Premise Liability

151.    Plaintiff S. Y. brings this claim against Defendant HHH for premise liability.

152.    In support of her action against Defendant HHH, Plaintiff S.Y. adopts and incorporates by reference paragraphs 1-129 contained in this Complaint as if fully set forth herein.

153.    At all times material to this complaint, the Plaintiff S.Y., while an invitee or otherwise lawfully present upon the premises of the Conty's Motel, did sustain injuries as a result of Defendant HHH, its patrons and the criminal activity carried on at the Conty's Motel.

154.    Defendant HHH, individually and by and through its agents, servants, franchisees and/or employees, owed a duty to maintain the premises of the Conty's Motel, that it owned, operated, controlled, supervised and/or for which it was otherwise responsible, in a reasonably safe condition and free from conditions that would render it dangerous and unsafe for the Plaintiff S.Y.

155.    Defendant HHH, individually and/or by and through its agents, servants, franchisees and/or employees, owed a duty to exercise reasonable care to protect the Plaintiff S.Y., by inspection or other affirmative acts, from the danger of any reasonably foreseeable harm occurring from the reasonably foreseeable use of the premises of the Conty's Motel that it owned, operated, controlled, supervised and/or for which it was otherwise responsible by sex traffickers.

156.    Defendant HHH, individually and/or by and through its agents, servants, franchisees and/or employees, owed a duty to exercise reasonable care to keep the hotel guests of the Conty's Motel, including Plaintiff S.Y., safe by implementing and enforcing security measures and proper protocols.

157.    Defendant HHH, individually and/or by and through its agents, servants, franchisees and/or employees, owed a duty to safeguard the Plaintiff S.Y. against criminal conduct that Defendant HHH could reasonably foresee happening at the Conty's Motel.

158.    Defendant HHH, individually and/or by and through its agents, servants, franchisees and/or employees, owed a duty to maintain the Conty's Motel in a hospitable, safe and reasonable

manner, as well those areas beyond the hotel's property lines for which Defendant HHH had possession, custody or control thereof.

159.    Defendant HHH had actual or constructive knowledge of prior similar sex trafficking incidents carried out at hotel properties it owned, operated, supervised, controlled and/or was otherwise responsible, including the Conty's Motel, as well as other hotel properties in Naples, Florida.

160.    Defendant HHH knew or should have known, in light of all the attendant circumstances stated herein, that the risk of such criminal conduct taking place at the Conty's Motel would be unreasonably high without Defendant HHH taking appropriate security precautions against such conduct as well as protocols for reporting and refusing such conduct.

161.    Defendant HHH, individually and/or by and through its agents, servants, franchisees and/or employees, had actual knowledge of the dangerous condition the Plaintiff S.Y. was in at the Conty's Motel, or in the alternative, that the dangerous condition existed for a sufficient length of time at the Conty's Motel such that Defendant HHH, in the exercise of ordinary care, should have known of the conditions, thereby giving Defendant HHH constructive knowledge of the Plaintiff S.Y.'s peril; and/or that the condition occurred with regularity at the Conty's Motel and was therefore foreseeable; and/or Defendant HHH should have known of the dangerous condition or peril by conducting proper and reasonable inspection of the hotel premises and/or guests' conduct.

162.    Because human sex trafficking and associated conduct was foreseeable, Defendant HHH had a duty to take adequate measures at the Conty's Motel to protect its guests, including the Plaintiff S.Y., from being victims of continued sex trafficking.

163.    At all times material, Defendant HHH, by and through its agents, servants, franchisees and/or employees, created and/or allowed the dangerous condition to exist at the Conty's Motel and/or failed to keep the Plaintiff S.Y. safe while she was on the premises of the Conty's Motel.

164.    Defendant HHH could have taken any number of corrective measures to make the dangerous conditions at the Conty's Motel cease, including but not limited to, not accepting payments, not allowing "Johns" to enter the Conty's Motel, not allowing  sex traffickers to enter the Conty's Motel, providing training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk; providing guidance on how to identify individuals who may be traffickers or their victims of the sex trafficking; establishing, implementing or enforcing protocols on reporting suspected human trafficking and responding to situations involving human trafficking; and enforcing provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks.

165.    In failing to take any measures to report and remove the dangerous condition from the premises of  the Conty's Motel, Defendant HHH failed to take reasonable care to protect the Plaintiff S.Y, its hotel guest.

166.    Furthermore, by leaving the hotel premises open and unattended, Defendant HHH encouraged the use of the hotel premises by loiterers, pimps, criminals, rapists and drug dealers to run its own criminal venture, prostitute, batter, falsely imprison, overdose, enslave, and gravely injure women, such as Plaintiff S.Y., who – because of their fear, mental state, financial restraints and physical injuries from the forced sex occurring in the Conty's Motel hotel rooms – were unable to rescue themselves. Accordingly, Defendant HHH's failure to act effectively enabled its hotel room(s) to confine and/or imprison the Plaintiff S.Y. without any safe means of escape from the "Johns" and/or "pimps".

33

167.    Defendant HHH, by and through its agents, servants, franchisees and/or employees, breached its duties owed to the Plaintiff S.Y., and was negligent regarding the Conty's Motel by:

      a.  Creating a dangerous condition;

      b.  Failing to correct the aforementioned dangerous condition;

      c.  Failing to report and refuse renting to the traffickers;

      d.  Failing to properly and adequately maintain the premises in a reasonably safe condition;

      e.  Failing to monitor and prevent its  hotel staff and agents from conducting and engaging in illegal sex and drug trafficking;

      f.  Failing to have security measures to protect the Plaintiff;

      g.  Failing to provide training regarding human trafficking awareness to employees who perform housekeeping duties, maintenance, or who work at the front desk;

      h.  Failing to provide guidance to employees on how to identify individuals who may be traffickers or their victims of the sex trafficking;

      i.  Failing to establish, implement or enforce protocols on reporting suspected human trafficking and responding to situations involving human trafficking;

      j.  Failing to enforce provisions within employee manuals or handbook on how to handle general emergency situations or manage criminal risks; and

      k.  Failing to take affirmative steps to investigate suspicious conduct and forbid criminal conduct.

168.    As a direct and proximate result of the acts and omissions of Defendant HHH, by and through its agents, servants, franchisees and/or employees – which led to the continuous dangerous condition at the Conty's Motel during the time period within which Plaintiff S.Y. was trafficked there (approximately 2013 through approximately February 2016) – Plaintiff S.Y. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All of the

losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

## COUNT IV
## Negligent Hiring, Supervision and Retention

169.    Plaintiff S. Y. brings this claim against Defendant HHH for negligent hiring, supervision and retention.

170.    In support of her action against Defendant HHH, Plaintiff S.Y. adopts and incorporates by reference paragraphs 1-129 contained in this Complaint as if fully set forth herein.

171.    Defendant HHH, through its agents, employees, franchisees and/or servants, negligently authorized criminals to rent rooms for prostitution and drug dealing at the Conty's Motel, creating a foreseeable risk that the Plaintiff S.Y. would be sold, used, abused, drugged, beaten and forced to engage in conduct for fear of her life.

172.    Defendant HHH, through its agents, employees, franchisees and/or servants, failed to either identify and/or report the human sex trafficking and foreseeable harm of the Plaintiff.

173.    Defendant HHH, through its agents, employees, franchisees and/or servants, failed to refuse continued lodging services to human sex traffickers.

174.    Defendant HHH was in control of the hiring of agents, employees, and/or servants at the Conty's Motel that it owned, operated, supervised, controlled and/or or was otherwise responsible, and was responsible for performing background checks on these agents, employees and/or servants; instructing, training and supervising said agents, employees, and/or servants; and deciding whether to terminate said agents, employees and/or servants.

175.    Defendant HHH had a duty to make an appropriate investigation of its agents, employees, and/or servants.

176.    Defendant HHH was in control of the supervising of the agents, employees, and/or servants at the hotels that it owned, operated, supervised, controlled and/or or was otherwise responsible, and was responsible for instructing, training and supervising said agents, employees, and/or servants.

177.    Defendant HHH knew or should have known that its agents, employees, and/or servants were allowing criminals to rent rooms for prostitution and drug dealing.

178.    Defendant HHH knew or should have known that its agents, employees, and/or servants were failing to either identify and/or report the human sex trafficking and foreseeable harm of the Plaintiff and others.

179.    Defendant HHH knew or should have known that its agents, employees, and/or servants were failing to refuse continued lodging services to human sex traffickers.

180.    At all material times, Defendant HHH was negligent in its hiring, employment, supervision and termination decisions regarding its agents, employees, and/or servants, and said negligent decisions caused the Plaintiff S.Y. to be injured.

181.    It was foreseeable that Defendant HHH's acts and omissions increased the risk that these illegal acts would regularly occur on the premises of the Conty's Motel and would cause harm to the Plaintiff S.Y.

182.    But for the negligence and omissions of Defendant HHH as to the Conty's Motel, the criminal conduct, including human sex trafficking, on the foregoing dates could have been prevented and/or stopped.

183.    Accordingly, Defendant HHH is liable for all harmful results that are the normal incidents of, and within the increased risk caused by, its negligent acts and omissions regarding the Conty's Motel.

184.    As a direct and proximate result of the acts and omissions of the Defendant, by and through its agents, servants, franchisees and/or employees – which led to the continuous sex trafficking of Plaintiff S.Y. from approximately 2013 through approximately February of 2016 – Plaintiff S.Y. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future

## COUNT V
## Negligent Rescue

185.    Plaintiff S.Y. brings this claim against Defendant HHH for negligent rescue.

186.    In support of her action against Defendant HHH, Plaintiff S.Y. adopts and incorporates by reference paragraphs 1-129 contained in this Complaint as if fully set forth herein.

187.    At all times material to this litigation, Defendant HHH was the owner and operator of the Conty's Motel and it ran a profit business of renting out rooms on the hotel premises.

188.    At all times material to this litigation, Defendant HHH knew or should have known that suspicious activity, illegal transactions, abuse, crimes, drugs and sex slavery were a regular occurrence at the Conty's Motel and were being conducted by a regular group of individuals.

189.    At all times material to this litigation, Defendant HHH knew or should have known that this type of environment posed a danger at the Conty's Motel.

190.    At all times material to this litigation, Defendant HHH had a duty to keep its hotel guests, including Plaintiff S.Y., and its hotel premises safe and prevent foreseeable criminal activity.

191.    At all times material to this litigation, Defendant HHH had a duty to take appropriate actions that would properly inform itself and make the appropriate repairs to make the Conty's Motel safe, or otherwise frustrate criminal activity.

192.    By failing to act and prevent suspicious behavior, Defendant HHH caused dangerous conditions to occur, exist and continue on its hotel premises at all relevant times in this complaint.

193.    Defendant HHH knew or should have known that an illegal sex trafficking venture and drug conduct was occurring at the Conty's Motel but took no appropriate actions to properly investigate, report, cease or prevent the illegal conduct, nor to safeguard its hotel guests and/or to rescue the Plaintiff S.Y. from the peril it caused by renting rooms at the Conty's Motel for extended stays to human sex traffickers.

194.    During all relevant times, Defendant HHH financially benefitted from the sexual trafficking rental money received from the Conty's Motel, where the Plaintiff S.Y. was held as a sex slave, and the consistent occupancy. By failing to prevent or correct the dangerous conditions on the premises of the Conty's Motel, Defendant HHH allowed the "Johns" continuing demand for the Plaintiff S.Y.'s services to always be met.

195.    As a result of the authorization, facilitation, access, financial benefits and concealment of the sex trafficking and drug use by Defendant HHH on the  premises of the Conty's Motel, the Plaintiff S.Y. was  placed in peril.

196.    Defendant HHH had a duty to make safe a dangerous condition at the Conty's Motel and to rescue its hotel guests, specifically Plaintiff S.Y., from the peril it created, as well as to protect and rescue its hotel guests, specifically Plaintiff S.Y., from foreseeable criminal activity.

197.    Defendant HHH had a duty to act as reasonably prudent person under emergency circumstances to rescue the Plaintiff S.Y. when it observed her on its hotel premises being sex trafficked, strung out, stumbling onto the adjacent highway, overdosed, injured and/or beaten.

198.    Defendant HHH failed to protect and failed to rescue the Plaintiff S.Y. despite its legal duty to rescue her as a result of the hotel-guest relationship and because it placed the Plaintiff S.Y. in the peril of continued and extended forced sex services.

199.    Defendant HHH failed to act as reasonably prudent hotel owner and operator, especially in light of the prior incidents and known issues at its hotel and in the Naples community.

200.    Plaintiff S.Y. suffered physical, mental, emotional and economic damages as the result of the actions and inactions of Defendant HHH.

201.    As a direct and proximate result of the acts and omissions of Defendant HHH, individually and/or by and through its agents, servants, franchisees and/or employees – which led to the continuous sex trafficking of Plaintiff S.Y. on the premises of the Conty's Motel from approximately 2013 through approximately February of 2016 – Plaintiff S.Y. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of capacity to enjoy life, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

## COUNT VI
### Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise

202.    Plaintiff S.Y. brings this claim against Defendant HHH for aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by her sex traffickers and "Johns."

203.    In support of her action against Defendant HHH, Plaintiff S.Y. adopts and incorporates by reference paragraphs  1-129  contained in this Complaint as if fully set forth herein.

204.    The affirmative acts of Defendant HHH in renting hotel rooms at the Conty's Motel for extended amounts of time to the Plaintiff's sex traffickers for sex trafficking, and failing to report illegal conduct to the authorities caused the Plaintiff S.Y. to be routinely confined to and imprisoned in the hotel rooms and the hotel premises.

205.    The affirmative acts of Defendant HHH in renting hotel rooms at the Conty's Motel for extended amounts of time to the Plaintiff's sex traffickers for sex trafficking, and failing to report illegal conduct to the authorities caused the Plaintiff S.Y. to suffer assault and battery at the hands of her sex traffickers and "Johns."

206.    Defendant HHH desired Plaintiff's continuous occupancy of the hotel rooms at the Conty's Motel, and that of her sex traffickers and "Johns," because it generated revenue, even if said occupancy was related to suspicious or criminal activity.

207.    Defendant HHH had knowledge, actual or constructive, that sexual trafficking victims, including the Plaintiff S.Y., were being confined and imprisoned and that they had no reasonable means of escape due to physical barricades of the Plaintiff's sex traffickers in the hallways, forced drug use and/or physical restraints.

208.    Defendant HHH had actual and/or constructive knowledge the Plaintiff S.Y. was being assaulted and battered at the hands of her sex traffickers and "Johns."

209.    Defendant HHH had knowledge, actual or constructive, that Plaintiff did not leave her rooms at the Conty's Motel for extended periods of times, nor allow maintenance to come into her hotel rooms.

210.    Defendant HHH provided substantial assistance to Plaintiff's sex traffickers and "Johns" in carrying out her imprisonment, confinement, assaults and batteries at the Conty's

Motel by allowing it to continuously use rooms there for sex trafficking, allowing "Johns" to find and visit the Plaintiff in her rooms at the Conty's Motel, and turning a blind eye to the unlawful conduct taking place so that they could obtain revenue from the renting of the rooms at the Conty's Motel.

211.   The knowledge of Defendant HHH, along with its actions and inactions, allowed traffickers and "Johns" to make the Plaintiff S.Y. their sex slaves.

212.   Defendant HHH facilitated or assisted the criminal enterprise by either willful blindness, gross negligence, and/or indifference.

213.   Accordingly, Defendant HHH is liable for all foreseeable damages that arose from the Plaintiff S.Y.'s confinement, imprisonment, drug use, assault and battery that continually took place at the Conty's Motel.

214.   As a direct and proximate result of the acts and omissions of Defendant HHH individually and/or by and through its agents, servants, franchisees and/or employees – which led to the continuous sex trafficking of Plaintiff S.Y. at the Conty's Motel from approximately 2013 through approximately February of 2016 – Plaintiff S.Y. has suffered bodily injuries that are of a continuing or permanent nature, resulting pain and suffering, disability, disfigurement, mental anguish, PTSD, humiliation, distress, deformation, loss of enjoyment of life, and expenses of medical treatment. All the losses are either permanent or continuing in their nature and the Plaintiff will suffer from such losses in the future.

215.   Due to all of the above allegations against Defendant HHH regarding Plaintiff's unlawful sex trafficking at its hotel premises, Plaintiff pleads allowance to recover damages, court costs and reasonable attorney's fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff S.Y. demands judgment against Defendant as identified in each of the above-referenced claims and Counts and as follows:

1.      Awarding compensatory damages to the Plaintiff for past and future damages for the described losses with respect to each count, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.      For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial;

3.      Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish the Defendant and deter future similar conduct;

4.      Awarding the Plaintiff reasonable attorney's fees;

5.      Awarding the Plaintiff the costs of these proceedings; and

6.      Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff S.Y. hereby demands a trial by jury.

Dated: August 19, 2020

**s/ Sharon M Hanlon**

Sharon M Hanlon, Esq
FL Bar Number: 946620
**Law Office of Sharon M. Hanlon, PA**
5633 Naples Boulevard
Naples, Florida 34109
Telephone: (239) 598-3222
shanlon@zelmanandhanlon.com
gcohen@zelmanandhanlon.com

**s/ Yale T Freeman**

Yale T. Freeman, Esq
FL Bar Number: 161855
**Yale T. Freeman, PA**
999 Vanderbilt Beach Road, Suite 200
Naples, FL  34108
Telephone: (239) 530-2500
ytfreeman@ytfreemanlaw.com

**s/ Brian J. Perkins**

Brian J. Perkins, Esq.
*To be Admitted Pro Hac Vice*
Virginia E. Anello, Esq.
*To be Admitted Pro Hac Vice*
Diana Yastrovskaya, Esq.
*To be Admitted Pro Hac Vice*
**Douglas and London, P.C.**
Attorney for Plaintiff
59 Maiden Lane, 6th Floor
New York, NY 10038
Telephone: (212) 566-7500
Fax: (212) 566-7501
bperkins@douglasandlondon.com
vanello@douglasandlondon.com
dyastrovskaya@douglasandlondon.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which I will send a notice of electronic filing to all counsel of record.

s/ *Sharon M Hanlon*

Sharon M Hanlon, Esq